Your argument next in Maitland v. Fishbein, 17-1142. Mr. Maitland, so you have seven minutes, but you've reserved one minute for rebuttal, so you'll have six minutes to start. That's correct, Your Honor. Morning, Your Honor. Morning. My name is Edson Maitland, and my wife, Yvonne, is here today, who is also a plaintiff in this matter. Your Honor, this case was dismissed from the Eastern District by Judge Azraq and Judge Tomlinson. The crux of this case, Your Honor, is my Florida driver's license. And according to Judge Azraq, and I'll go straight to her order, she said, referring to my driver's license, my Florida driver's license, I'm correct, if truth would establish complete diversity in this case, that is to say, if my driver's license is a genuine driver's license, which is a Florida driver's license, I would have diversity jurisdiction to go on in this case. And I put to the court today that my wife and I, we are both Florida citizens. Where do you work? I retire, Your Honor. And where do you live? I live in Florida. Where? 33 Ramble Hood Drive, Palm Coast, Florida, from around over 70 years, Your Honor. With my kids also. But you have a business here, or what is it that's up in New York? I have a property here, a property in, right, where I used to live. Then I moved to Florida back in 2010, and I rented out my property in New York. So I do get income from that property. May I go on? Okay. So what Judge Azraq is saying, I would be muddy in the water at this point because she don't believe my driver's license is valid. And also, under that case, Your Honor, I also submit a number of documents to Judge Azraq before she made her decision in reference to the motion to dismiss. I submit exhibits from 1 to 39, I believe, in which there was a number of exhibits with my Florida address on it. And even the application for filing this complaint was filed with a bank check stating my address on the bank check, Your Honor. And also, even for this court application, the $550 that I submit is also a bank check from Florida. So I'm not sure where the lower court just decided to say I do not have jurisdiction in the Eastern District. I also, within that case, Your Honor, I also signed a notice of voluntary dismissal with one of the defendants in which Judge Azraq signed off on, and my address was on that dismissal. My Florida address was also on that dismissal of settlement. So just to get to the underlying merits so that I understand, much of what happened, much of what you claimed happened, happened in 2006, is that right? No, Your Honor, it continued happening. It started in 2006, and it moved up to this date. Up until today. Up until today. There's a lien on my property, Your Honor, and there's also claims on my New York property, which the broker himself fraudulently- When did you first know about the liens and so on? When I moved to Florida back in- 2010. That's correct, Your Honor. When I was going through my record, and I realized what's this, and then I informed the bank, Chase, to take action about it, and they failed to do so. So the lien is still there, and it's encompassing my property. So the case still goes on. You sued in 2015, is that right? Yes. I believe- Yes, Your Honor. The case was filed in 2015, and then an amendment was filed in 2016, which I amended the case, Your Honor. So, Mr. Maitland, what I take it you want, at least in part, is to be allowed to amend your complaint? That's correct, Your Honor. To make it clear that you are not just a resident, but a citizen of Florida based on all of the- on your driver's license, your spouse's driver's license, and so on. That's correct, Your Honor. Do you vote in Florida? Do you pay taxes in Florida? Yes, yes, yes, Your Honor. Actually, I built the house in Florida while I was up here so that we can move down there. And the property you've got here, you lease out? I rent it out. And, in fact, I refer- I alluded to the judge, said the property is in dispute with the town of Hempstead because I rented out to the town of Hempstead while I was in Florida. And that case is still going on. And I made reference to it to Your Honor, the lower court, and the lower court refused to look at the case. She said she don't have any time to look through the records. And the record itself- the record- I'm sorry. The record itself will show that I rented out 224 Park Avenue and the person didn't pay any rent and damaged the property and is in federal court as of this moment. And, again, I should point it out to Your Honor, there was another case before that where I was terminated with the same judge who dismissed the Conica- to Florida, I wrote- I'm sorry- I wrote a letter to the court to say I was moving. So there's a letter in the record to say I'm moving to Florida. And this is my new address. And this- You presented all this- I mean, I take it you didn't present the license. Yes, Your Honor. I presented the license- To the district court. Yes, Your Honor. And I also made a reference to this case and said, Your Honor, and it's the same judge that did both cases. Mr. Maitland, as I told you, you've reserved a minute for rebuttal, so we'll hear from the other side. Thank you, Your Honor. And then we'll hear from you at the end. Thank you, Your Honor. Good morning, Your Honors. May it please the court. Brian Scabetta from McAulay-Raymer-Liebert-Pierce on behalf of JPMorgan Chase Bank. To address the big issue here, the diversity jurisdiction finding of the district court, finding that diversity jurisdiction had not been sufficiently pled here, we believe that finding was correct based upon the record that was before the district court at the time they made that ruling. What do you believe now? Well, I don't know whether or not what he's saying here is accurate, but I know he contends strongly. He's a Florida resident. But in the amended complaint, he stated in a single sentence, I'm a resident of Florida. In opposition to the motions to dismiss, he submitted a number of documents that showed he had a New York address. Such as? The correspondence. Anything in addition to the, other than the Hempstead property? No, the correspondence he put in showed the address of the Hempstead property, the New York property, which is the property in question with respect to my client, Chase. What's the basis on which you were contending that he is not a Florida domiciliary? We're contending that under the law, he did not sufficiently plead that he was a Florida resident. Lots of people confuse residency and citizenship and domicile. I mean, he was pro se, right? Yes, that's correct, Your Honor. And understanding that the pleading standards are a bit relaxed for pro se, you still have to meet a certain requirement, and our position is that he fell short. He also fell short of pleading the citizenship of Chase and the other defendants, the Fishbinds. Because again, as to Chase, he says the principal place of business is in New York, nothing else. He did not plead anything else. And as to the Fishbinds, a similar single sentence, they reside in New York. You and I have got the great pleasure of being part of a terrific profession where we are intimately familiar with all the ins and outs, and the Maitlands are pro se. So with the benefit of liberally construing complaints and so on, what should we do? Should we consider at least the fact that it appears right now that he and his spouse, the Maitlands, are in Florida, intend to stay in Florida, they're with their kids in Florida, and as Judge Parker noted, not everybody knows the distinction between residency and citizenship. And it may be that the underlying claims, this is a question that I asked Mr. Maitland, I'll ask the same of you, that the underlying claims are time barred. But why, and I understand you're doing your job, but why in the context of a pro se case, shouldn't we more liberally construe what happened? Well, respectfully, Your Honor, and understanding what you're saying, I think based on what the district court judge had before her at the time she made that decision, the documents before her, I know he's talking about the license and other documents. Those may have been submitted after the motions. I know he had objected, but based on what the judge had before her, the ruling was correct in our view. And we think that ruling could be affirmed, and notwithstanding whether or not at a later time he could amend or file another action and make allegations. Was there a motion to amend, or was there an opportunity to amend? We had agreed with him one time. We permitted him to amend one time. I believe the parties had done a stipulation, and he had amended once. To my knowledge, he did not make another application seeking to amend again. And his papers were submitted in opposition to our motions to dismiss. So I do not believe an application for him to amend was on the table. I was going to address the RICO claim, but Mr. Maitland did not address it. I think our position as to why that claim fails us to chase is clear from our papers. But if Your Honors have any inquiries in that regard. Thank you. That's all. Thank you. Thank you. Mr. Muller. Good morning. May it please the Court, Andrew Muller from the firm of Platzer Swirlgold representing Robert Fishbein and Lisa Fishbein. This is one of those cases where the perspective of both defendants is really very similarly aligned. I'm not sure that I can add any more to the position that's any different relative to the Fishbeins as opposed to Chase. With respect to the diversity issue, once the magistrate issued her report and recommendation and stated therein that references to a party's residency are different than references to citizenship, which are required to show diversity of citizenship, the Maitlands were informed of that distinction, and they, in fact, were also notified of the opportunity . . . What's the difference between domicile and citizenship? Domicile is where you live, in my mind, and it would be a component of demonstrating citizenship because in addition to being where that you live, as the Maitlands mentioned, they're there with their children, there should be an indication of perhaps not only from a tax return where you declare your residence to be, but enrollment in schools . . . Intent to remain. And intent to remain. You have to be physically present and intent to remain and have it demonstrated. And I think in this case, it's more important because the events that were at issue concerning the mortgage loans relative to the New York property, from that point in time until the date that this action was started, the Maitlands maintained that they changed the location of where they live, where they reside, and in fact, where they are a citizen. And before the record at the time the amended complaint was considered, there was insufficient material in order to make an assessment that indeed, citizenship had changed from New York to Florida, assuming . . . Ultimately, your argument is that based, as your colleague's argument was, based on the extant record at the time of the report and the time of the district court's opinion and order, it didn't have the benefit of any record evidence showing that they were citizens of Florida. Yes, I would agree, but there were several opportunities . . . Well, there were several opportunities after the fact because, you know, we're discussing the consideration of an amended complaint, which meant that there was an original complaint. I don't know whether there were any revisions relative to the residency citizenship issue when the complaint was amended to become an amended complaint. There was then the objections to the motion to dismiss where that issue was raised. There was the issuance of the magistrate judge's report and recommendation, as well as notice of the opportunity to file opposition and also an indication that this was a point that should have been addressed. And even now in the brief, there's just not enough material. To follow up on Parker's earlier question, so there was some indication or some explanation of the difference between residency and citizenship? I'm sorry? Was there some explanation provided to the Maitlands of the difference between citizenship and residency? I believe in the report and recommendation there was because it was particularly highlighted that references to where you reside are not the same as a declaration of what your citizenship is. If there were Florida domiciles, would they be diverse? Again, if you're merely a domicile, it's unclear. The question is whether you're a Florida citizen. How can you be a domicile without being a citizen? Explain to me the two most important differences. Counselor? I'm having difficulty because it may be an issue of splitting hairs. But the point is that with what was present at the time, there was an insufficient showing. Thank you. Thank you, Mr. Maitland. You've got one minute. Your Honor, I should point out that in my complaint, I stated that I resided in Florida. And that's what got you into trouble? Right. And I realized because I'm coming from the dictionary, which means having one's permanent home in a particular place. So the other side says that at least in the report and recommendation, Mr. Mueller says, at least in the report and recommendation, you were informed of the difference between residency and citizenship and told there's a problem. And you didn't do anything to follow up to resolve that issue. The difference wasn't clear, Your Honor. And what I understand about it is that was the reason why I submit my driver's license and my passport. So if I submit my passport, I'm looking at it as citizen of a country. So that's my understanding from a layman prospect. So that's why I sent my passport to the court. In your complaint, you referred to the New York property as your home. Back in November 2006, that's where the narrative start. And that's why I said that. It was my home first. And by 2010, I moved. But as I say, Your Honor, the lower court is aware and they deal with me on two other cases that they know. We even did phone conference from Florida to the chambers due to scheduling of those cases. So I'm not a stranger to the lower court, Your Honor. Was that before the same judge, Mr. Maitland? You may have already told us, and I'm not clear on that. Yes. Yes. It was before the discovery judge was Judge Tamblinson. And she did both case, the Conaca case and also the Hempstead case. And Judge Azraq did the Conaca case, which I send that letter to say I moved within that period of time. So there was a record of I moving from New York to Florida. And if she had just gone back to the record to say, who is this? Who is this Maitland? This name is familiar. And I even cite the case to her in the motion. She said, please look at this case because you already dismissed this case while I was in Florida. And the record would reflect that I'm a Florida citizen. And I reside in Florida. Thank you, Your Honor. Thank you very much, Mr. Maitland. We'll reserve the decision. That concludes the final oral argument on today's calendar. And court is adjourned. Court is adjourned.